**IN THE UNITED STATES DISTRICT COURT**                    O
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **JORGE BARRIOS** | § | |
| *Petitioner*, | § | |
| | § | **CIVIL ACTION NO.  5:09-cv-15** |
| **v.** | § | **CRIMINAL NO. 5:07-cr-1523-1** |
| | § | |
| **UNITED STATES,** | § | |
| *Respondent.* | § | |

## OPINION & ORDER

Pending before the Court is Jorge Barrios's ("Barrios") Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody under 28 U.S.C. § 2255, [Dkt. No. 1],[1] which the Court deems filed on January 28, 2009.[2]  For the reasons stated herein, Barrios's Motion is **DISMISSED WITH PREJUDICE**.

## I.      JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255 because it was filed within one year of the date on which his judgment of conviction became final.  *See* 28 U.S.C. § 2255(f)(1) (2006).

## II.     FACTS AND PROCEEDINGS

On November 6, 2007, a federal grand jury in Laredo, Texas returned a three-count indictment against Barrios charging conspiracy with intent to distribute, possession with intent to distribute, and intentional importation in excess of 5 kilograms of cocaine.  [Cr. Dkt. No. 10].

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system.  The Court will cite to the docket number entries rather than the title of each filing.  "Dkt. No." will be used to refer to filings in case number 5:09-cv-15.  Unless otherwise noted, "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:07-cr-1523.

[2] Although the Clerk received Barrios's motion on February 3, 2009, it is dated January 28, 2009.  Thus, January 28, 2009 is the earliest date it could have been delivered to prison authorities for filing, the pertinent date for deeming a document filed by a *pro se* prisoner under *Houston v. Lack*, 487 U.S. 266, 276 (1988).  *See United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992).  The Court deems the petition filed as of the earlier date.

Barrios decided to forego trial and entered a plea of guilty before United States Magistrate Judge Adriana Arce-Flores as to Count Two of the indictment.  [Min. Entry of Dec. 11, 2007].  Count Two of the indictment specifically charged Barrios with possession with intent to distribute in excess of 5 kilograms of cocaine, a Schedule II controlled substance in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) and Title 18, United States Code Section 2. [Cr. Dkt. No. 10].  The Court accepted his plea.  [Cr. Dkt. No. 19].  Based on his acceptance of responsibility and the waiver of his right to appeal and collaterally attack his sentence under a plea agreement, Barrios's base offense level was lowered from 35 to 30. [Presentence Investigation Report ("PSR") at 5-7].  On April 3, 2008, Barrios was sentenced to 97 months imprisonment, three years supervised release, and a $100 special assessment fee. [Min. Entry 4/3/2008; Cr. Dkt. No. 28].

On January 28, 2009, Barrios filed the § 2255 motion now before the Court.  Construing Barrios's motion liberally, Barrios lists three possible grounds for relief.  [Dkt. No. 1].  First, Barrios asserts that he received ineffective assistance of counsel at his sentencing hearing and that his attorney did not file a notice of appeal on his behalf.  Second, Barrios asserts that his attorney coerced him to plead guilty.  Third, Barrios requests that the Court consider re-calculating his sentence because he is not a U.S. resident and, therefore, cannot participate in all of the Bureau of Prison Programs.

## III.   DISCUSSION

### A.     Standard for Relief under 28 U.S.C. § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Vaughn*, 955 F.2d 367,

368 (5th Cir. 1992) (per curiam) (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)).   Generally, § 2255 claims fall under four categories: (1) constitutional issues; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).  After conducting an initial examination of the petition, the Court must dismiss it if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief."  28 U.S.C. § 2255, Proc. R. 4(b).

### B.      Ineffective Assistance of Counsel

Barrios first has alleged ineffective assistance of counsel, a wrong of constitutional proportion, which is proper in a motion under 28 U.S.C. § 2255.  [Dkt. No. 1 at 5-6].  In order to merit post-conviction relief due to ineffective assistance of counsel, Barrios must demonstrate that (1) counsel's performance was deficient and (2) that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir.), *cert. denied*, 513 U.S. 960 (1994) (summarizing the *Strickland* standard of review).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See id.*; *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) (finding that "[f]ailure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim . . . .").  Thus, a court does not have to analyze both components of a claim of ineffective assistance of counsel if the movant has made an insufficient showing as to one prong.  *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).

### 1.      Sentencing Guideline Departures

Barrios first avers that he received ineffective assistance of counsel because "counsel did

not f[i]ght over departures that I was entitle[d] to under the sentencing guidelines."  [Dkt. No. 1 at 5].  Even read in the light most favorable to Barrios, this statement is vague.  28 U.S.C. § 2255 Proc. R. 2(b) (requiring that a § 2255 motion "specify all grounds . . . [and] state the facts that support each ground").  Barrios does not state which specific "departures" his counsel should have argued.  Moreover, the Court's review of the record does not show that Barrios's counsel was ineffective nor that he suffered prejudice.

### 2.        Failure to File Notice of Appeal

Barrios next contends that he received ineffective assistance of counsel when his counsel did not file an appeal on his behalf.  To prevail on a claim of ineffective assistance of counsel for failure to file a notice of appeal, Barrios must demonstrate that his counsel's failure to file a notice of appeal fell below an objective standard of reasonableness and that it prejudiced him. *See Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 & 484 (2000).   In *Flores-Ortega*, the Supreme Court held an attorney's failure to file a notice of appeal requested by a defendant is *per se* ineffective assistance of counsel, even without a showing that the appeal would have had merit. *Id.* at 477.  For the same reason, a defendant who explicitly instructs his attorney not to file an appeal cannot later complain that his counsel performed deficiently in failing to file a notice of appeal.  *Id.* (citing *Jones v. Barnes* 463 U.S. 745, 751 (1983)).

When an attorney has failed to consult with his client about an appeal, the Court must inquire whether the law requires counsel to consult with his client.  *See Flores-Ortega* 528 U.S. at 479-80 (rejecting the bright-line rule that counsel must always file a notice of appeal or consult with the defendant regarding an appeal).  This inquiry goes to whether an attorney has acted reasonably.  An attorney has "consulted" with his client when he has advised him "about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover

defendant's wishes." *Id*. at 477.  If counsel "consulted" with his client, then the attorney has acted unreasonably only by "failing to follow the defendant's express instructions with respect to an appeal." *Id*.  But if the attorney did not consult with the defendant, then the Court has to determine whether the attorney's failure to consult itself constitutes deficient performance. *Id.* at 480.

Counsel deficiently performs when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for an appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*.  In determining whether counsel has a duty to consult with a defendant about an appeal, a court must consider "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id*.  But "[i]n cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id*.  Finally—in accordance with *Strictland*—even if a defendant is able to show that his counsel was deficient in his failure to consult with him about an appeal, he must nonetheless show prejudice by "[demonstrating] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484.

Here, Barrios contends that his counsel performed deficiently, in part, by not filing an appeal on his behalf.  [Dkt. No. 1 at 5].  As an initial matter, the Court notes that Barrios does not allege that he requested an appeal; indeed, Barrios has failed to allege any facts showing that he wished to appeal or that his counsel failed to consult with him about an appeal.  Instead, Barrios

merely states his counsel misled him "by stating that there was nothing to do, and by not filing an appeal as required on my behalf." [*Id*.]. But even assuming that counsel failed to consult with Barrios about an appeal, the record is sufficient to reflect that, under the circumstances of this case, a rational defendant would not want to appeal. Importantly, because Barrios's conviction followed a plea bargain and waiver of appeal, the scope of appealable issues available to Barrios was limited. It is also clear that Barrios received the benefit for which he bargained. Based on his qualification for safety valve, acceptance of responsibility and waiver of his right to appeal and collaterally attack his sentence, Barrios's base offense level was reduced from 35 to 30. [PSR at 5-7].

Additionally, the record does not reflect that Barrios reasonably demonstrated to his counsel that he was interested in appealing his sentence. Indeed, Barrios waived his right to appeal in his plea agreement. [Dkt. No. 15]. During his re-arraignment hearing, Barrios represented that he read and signed his plea agreement. [Digital Recording of December 11, 2007 ("R.Rec.") at 2:27 p.m.]. Barrios also replied affirmatively when asked whether he understood that he was giving up his right to appeal in exchange for a reduction in his guidelines range. [R. Rec. at 2:28 p.m.]. At sentencing, Barrios did not indicate that he now sought to appeal. Further, as noted above, Barrios has set forth no facts to indicate that he asked to appeal. Finally, the record does not reflect any non-frivolous grounds for appeal.

Under these circumstances, the Court finds that Barrios's counsel was not deficient in his performance even if he failed to consult with Barrios. *See Roe*, 528 U.S. at 480 (noting that counsel may reasonably decide that he need not repeat a defendant's appeal rights where "a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult"). For these reasons, the

Court finds that Barrios's bare assertion that his counsel denied him effective assistance "by not filing an appeal as required on [his] behalf" is insufficient to show that he received ineffective assistance of counsel.  [Dkt. No. 1 at 5].

### C.    Coercion

In his § 2255 motion, Barrios next asserts that his "[c]onviction was obtained by use of a coerced confession."  [Dkt. No. 1 at 6].  However, nothing in the body of the motion references a coerced confession.  Rather, Barrios appears to claim that his attorney coerced him into pleading guilty.  [*Id*.].  Specifically, Barrios alleges that his attorney told him that "if he did not plead guilty the court will get angr[y] and give him a harsher sentence[]."  [*Id.*].  Barrios continues, "[s]cared and not knowing what to expect [I] accepted [the] offer that the Government presented not understanding the consequences of the plea."  [*Id.*].  In effect, Barrios contends that his plea was not voluntary.

Because a plea relinquishes constitutional rights of a defendant, "the Constitution insists . . . that the defendant enter a guilty plea that is 'voluntary.'"  *United States v. Ruiz*, 536 U.S. 622, 628-29 (2002) (citations omitted).  In analyzing whether a plea was voluntary, courts "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea."  *United States v. Garcia*, 983 F.2d 625, 627-28 (5th Cir. 1993); *see also* FED. R. CRIM. P. 11.  Federal Rule of Criminal Procedure 11 provides procedural safeguards to ensure that these three core concerns are addressed.  Rule 11 requires the Court to "address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises."  *See* FED. R. CRIM. P. 11(b)(2).[3]  However, a district court's failure to fully comply with Rule 11 does not

---

[3] It should be noted that subsection (h) of Rule 11 provides, "A variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights."  *See* FED. R. CRIM. P. 11(h); Advisory Comm. Note, 1983

render a defendant's plea involuntary.  *See United States v. Salado*, 339 F.3d 285, 293 (5th Cir. 2003).  "So long as [a district court] is convinced by the record before him that a guilty plea is not coerced, a further showing that the plea is knowingly entered and there exists sufficient evidence of guilt will satisfy the requirements of Rule 11."  *Barrientos v. United States*, 668 F.2d 838, 841 n.2 (5th Cir. 1982) (quoting *United States v. Martinez*, 486 F.2d 15, 21 (5th Cir. 1973)).

In this case, the record bears no indication that Barrios's attorney coerced him into pleading guilty.  Importantly, through his sworn plea agreement, Barrios acknowledged that he was not coerced into pleading guilty.  In pertinent part, his plea agreement states as follows: "The Defendant acknowledges that no threats have been made against the Defendant and that the Defendant is pleading guilty freely and voluntarily because the Defendant is guilty."  [Cr. Dkt. No. 15 at ¶ 16].  And after the Magistrate Judge reviewed the terms of his plea agreement during his rearraignment hearing—that in exchange for his plea, the Government would ask the Court to grant Barrios acceptance of responsibility, to sentence him at the appropriate level of the guidelines, to grant him an additional reduction for waiver of appeal, and to dismiss all remaining counts at sentencing—Barrios confirmed that he was not promised anything else in exchange for his plea.  [R.Rec. at 2:28 p.m.].

Furthermore, the record contains other evidence of Barrios's guilt.  During the rearraignment, the Government recited the facts resulting in Barrios's arrest in Laredo, Texas. [R.Rec. at 2:43 p.m.].  The Government stated that, as a result of a Customs and Border Patrol inspection and canine alert, agents discovered cocaine hidden in Barrios's truck, and that Barrios subsequently "admitted knowledge of the cocaine and further admitted that he had been hired to

---

Amendments; *see also Vonn*, 535 U.S. at 66-71.  In light of Rule 11(h), the Supreme Court has recognized that a "defendant will rarely, if ever, be able to obtain relief for Rule 11 violations under §2255."  *United States v. Dominguez-Benitez*, 542 U.S. 74, 89 n.9 (2004).  The Supreme Court has also stated that "collateral relief [under §2255] is not available when all that is shown is a failure to comply with the formal requirements of the Rule."  *United States v. Timmreck*, 441 U.S. 780, 784 (1979).

deliver the cocaine to the Houston, Texas area in exchange for a payment of $6,000." [*Id.*]. After hearing these facts, Barrios presented no objections to their truthfulness and pled guilty. [R.Rec. at 2:44 p.m.]. Such facts were also noted in Barrios's presentence report, [PSR at ¶ 9], and during his sentencing proceeding, Barrios confirmed that he reviewed his presentence report and did not, at any time, object to the truthfulness of any facts contained therein. [Digital Recording of April 3, 2008 Sentencing ("S.Rec.")]. Additionally, prior to his sentencing, Barrios submitted a letter to the Court in which he stated, seemingly in reference to the offense leading to his arrest, that "[i]t appeared easy to do what [he] did like [he] was going to receive a good payment [he] thought [he] would get out of debt," and also that he "committed this mistake." [*See* PSR].

Moreover, during the plea colloquy before the Magistrate Judge, Barrios displayed an understanding of the charges against him and the consequences of his plea. He knew "the immediate and automatic consequences" of a guilty plea "such as the maximum sentence length or fine." *Duke v. Cockerell*, 292 F.3d 414, 416. At his re-arraignment, the Magistrate Judge placed Barrios under oath and conducted a Rule 11 hearing. [R.Rec. at 2:13-2:14 p.m.]. The Magistrate Judge then read Count Two of the indictment to which Barrios was pleading guilty. The Magistrate Judge then asked Barrios if he understood the charge. Barrios replied, "Yes." [R.Rec. at 2:19-2:20 p.m.]. The Magistrate Judge then had the Assistant U.S. Attorney inform Barrios that he faced a maximum punishment of life in prison and a maximum fine of four million dollars. The Magistrate Judge then asked, "[d]o you understand that that is the maximum penalty you will be facing and more importantly because of the type of narcotic and amount involved sir you are facing a minimum sentence unless you qualify for the safety valve, sir." Barrios responded, "[y]es." [R.Rec. at 2:20-21 p.m.]. Thus, it is apparent that Barrios

understood the charges against him and the consequences of a guilty plea.

Finally, the Court notes that the Magistrate Judge did not specifically ask Barrios whether he was threatened, coerced, or forced to enter his plea.  That Barrios was not asked this particular question is not dispositive, however, since the Court is satisfied, after a review of the record and Barrios's plea colloquy, that his plea was both knowing and voluntary and thus not the result of coercion and that there is sufficient evidence of guilt.  For these reasons, the Court concludes that Barrios has failed to demonstrate that his attorney coerced him into pleading guilty.

### D.    Treatment Because of Deportable Alien Status

Next, Barrios argues that because of his status as a deportable alien, he is subjected to disparate treatment and harsher conditions of confinement at the hands of the Bureau of Prisons than U.S. citizens.  [Dkt. No. 1 at 8].  Particularly, Barrios claims he does not have access to community relief programs where he could earn a reduction in his sentence.  [*Id.*].  He alleges he has been denied due process and equal protection under the law.

A district court generally may consider an allegation of a denial of equal protection and due process rights under 28 U.S.C. § 2255 as it is constitutional in nature.  However, Barrios's argument—that a deportable alien serves his sentence under circumstances more severe than those faced by U.S. citizens—actually concerns the execution of a sentence.  Therefore, it is proper only under 28 U.S.C. § 2241.  *Carvajal v. Tombone*, 31 Fed. App'x 155, at *1 (5th Cir. 2001) (unpublished opinion) (citing *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992)).  For a district court to construe such a claim as a § 2255 motion is reversible error.  *See Carvajal*, 31 Fed. App'x 155, at *1.  Motions under 28 U.S.C. § 2241 usually must be brought in the place of Petitioner's confinement, which in this case is the CCA/Eden Detention Center in Eden, Texas.  Eden, Texas is located in the Northern District of Texas, San Angelo Division.

Therefore, this Court appears to lack statutory jurisdiction to hear the claim.

The Court normally would transfer the case to the place of Barrios's confinement. *See* 28 U.S.C. § 1631.  When a court lacks jurisdiction, § 1631 states that the Court "shall, if it is in the interest of justice, transfer such action" to the proper court.  However, the Fifth Circuit has indicated that it defeats the interest of justice to transfer a meritless claim that will consume judicial time and energy. *Chandler v. Commander, Army Fin & Accounting Ctr.*, 863 F.2d 13, 15 (5th Cir. 1989); *see also Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000) (holding that "a court is authorized to consider the consequences of a transfer by taking 'a peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is already doomed") (citation omitted); *Wigglesworth v. I.N.S.*, 319 F.3d 951, 959 (7th Cir. 2003) (reasoning that the court has implicit authority under § 1631 to "take a peek" at the merits when deciding whether to transfer or dismiss).  The Court, therefore, will "take a peek" at the merits to determine whether transfer would serve the interest of justice.

Barrios alleges that because he may not be eligible for certain Bureau of Prisons programming, or to serve a portion of his sentence in a halfway house, he is being treated differently from similarly situated U.S. citizens. *Cf. Samaad v. City of Dallas*, 940 F.2d 925, 941 (5th Cir. 1991).  Because INS detainee status is not a suspect classification, Barrios must show that no rational basis exists for treating him differently from similarly situated U.S. citizens. *Carvajal*, 31 Fed. App'x 1551, at *1 (citing *Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998)).

Barrios's claim lacks merit.  He has not alleged that denying deportable aliens the program benefits available to other federal prisoners or a chance to serve time in halfway houses lacks a rational basis. *Cf.  Rublee*, 160 F.3d 213, 214, 217 (5th Cir. 1998) (holding that flight

risk of deportable aliens is rational basis for ineligibility for community-based programs); *Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) (applying "rational basis" review of equal protection claim to right to early release).  The Bureau of Prison's exclusion of INS detainees such as Barrios from certain programs and serving a portion of his sentence in a halfway house, therefore, is constitutional.  Barrios's claim under 28 U.S.C. § 2241 lacks merit, and the Court will dismiss, not transfer this claim.  *See* § 1631; *Chandler*, 210 F.3d at 1150.  Accordingly, Barrios's claim of disparate treatment is **DISMISSED** with prejudice.

## IV.    CONCLUSION

For the reasons stated herein, all of Barrios's claims are hereby **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

DONE this 18th day of September, 2009, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE